**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

SHIRLEY CHARLEBOIS-DEUBLER,

        Plaintiff,

vs.                                 Case No. 6:11-cv-1307-Orl-37GJK

PRUDENTIAL INSURANCE COMPANY
OF AMERICA,

        Defendant.
_____

**ORDER**

This cause is before the Court on the following:

1.      Plaintiff's Motion for Summary Judgment (Doc. 25), filed July 2, 2012;

2.      Plaintiff's Notice of Filing Redacted Exhibit A (Doc. 30), filed July 30, 2012;

3.      Defendant's Response in Opposition to Plaintiff's Summary Judgment Motion and Cross-Motion for Summary Judgment (Doc. 34), filed August 17, 2012;

4.      Plaintiff's Reply to Defendant's Response in Opposition to Plaintiff's Motion for Summary Judgment and Response to Defendant's Cross-Motion for Summary Judgment (Doc. 35), filed August 31, 2012;

5.      Defendant's Reply Brief in Support of Cross-Motion for Summary Judgment (Doc. 36), filed September 13, 2012;

6.      Magistrate Judge Gregory J. Kelly's Report and Recommendation (Doc. 37), filed November 1, 2012;

7.      Plaintiff's Specific Written Objections (Doc. 38), filed November 15, 2012; and

8.    Defendant's Response to Plaintiff's Objections (Doc. 41), filed December 6, 2012.

## BACKGROUND

Plaintiff Shirley Charlebois-Deubler brings this action pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et. seq.*, because Defendant Prudential Insurance Company of America denied her claim for benefits under a $500,000 Accidental Death and Dismemberment Policy ("ADD policy"). (Doc. 1.) Plaintiff seeks benefits for the disability suffered by her husband, Michael A. Charlebois, as the result of a motorcycle accident. (*Id.*) Plaintiff is the beneficiary of the ADD Policy; her employer is the plan sponsor and administrator; and Defendant Prudential Insurance Company of America is the claim administrator. (*Id.*)

The ADD policy provides benefits when a covered person suffers a "loss due to Quadriplegia, Paraplegia, or Hemiplegia" within 365 days of an accident. (Doc. 30-5, p. 125.) The policy defines quadriplegia as "the complete and irreversible paralysis of both upper and lower limbs"; paraplegia as the "the complete and irreversible paralysis of both lower limbs"; and hemiplegia at the "complete and irreversible paralysis of the upper and lower limbs on one side of the body." (*Id.*) Paralysis is not defined by the policy.

Mr. Charlebois was injured in a motorcycle accident on August 26, 2007. (Doc. 30-3, p. 82.) He suffered significant injuries, including head trauma, the severance of one finger and the fracture of another on his right hand, and a broken leg. (*Id.* at 83.) He was treated for his injuries at a hospital trauma center and discharged a month after the accident to a rehabilitation clinic. (Doc. 30-5, p. 44.) By November 2007, Mr. Charlebois had returned home, but he could not yet perform all the activities needed to

take care of himself. (*Id.* at 93.)

Mr. Charlebois saw his treating physician on November 30, 2007, for a follow up appointment. (*Id.*) The physician noted that he shifted in his wheelchair during the examination but had "good muscle strength [in his] upper and lower extremities" with a "normal gait." (*Id.*) Mr. Charlebois was seen by the same physician again on January 9, 2008. (Doc. 30-3, p. 50.) He presented at the appointment in a wheelchair and was "restrained around the chest." (*Id.*) The record of the appointment notes that he had "obvious wasting [of the] interdigital musculature and thenar eminence" of one hand, as well as a normal range of motion in his extremities. (*Id.*)

On March 20, 2008, Mr. Charlebois was seen by a family practitioner. (*Id.* at 87) According to the record of that examination, Mr. Charlebois had a decreased range of motion. (*Id.*) Mr. Charlebois was instructed to include left arm exercises in his weekly physical therapy routine. (*Id.*) The record does not indicate whether Mr. Charlebois used a wheelchair. (*Id.*)

Mr. Charlebois was discharged subsequently from physical therapy because of his lack of progress. (*Id.* at 109.) The next month, he was seen by a physician regarding a sharp pain in his ear, as well as shoulder pain and memory loss. (*Id.* at 99.) The record does not indicate whether Mr. Charlebois used a wheelchair. (*Id.*) Plaintiff consulted with a physician again on May 30, 2008, regarding her husband's condition. (*Id.* at 96.) During that consultation, she indicated that he exercised by walking twice a week in the yard. (*Id.*)

On August 27, 2008, Mr. Charlebois reported to his doctor that he felt well but that he was sleeping poorly. (*Id.* at 70.) He also indicated that he was no longer exercising, but no reason was given for this change. (*Id.*) Mr. Charlebois complained of

suffering from leg pain during an examination less than a month later. (*Id.* at 67.) According to the record, he experienced pain in his right leg following a fall. (*Id.*) By November 2008, Mr. Charlebois' condition had progressed to the point where he could not walk. (*Id.* at 63.) His medical records indicate that he was unable to stand from a wheelchair and suffered moderate wasting of his hand by December 2008. (*Id.* at 61.) This condition remained until Mr. Charlebois passed on June 22, 2009. (*Id.* at 51, 54, 94.)

Following Mr. Charlebois' death, Plaintiff submitted a claim for accidental death benefits under the ADD Policy. (Doc. 30-6, pp. 60–63.) Her claim was denied by Defendant.[1] (*Id.* at 87–89.) Plaintiff then submitted a claim for accidental dismemberment benefits under the policy. (Doc. 30-4, p. 4.) In her subsequent claim, Plaintiff contended that Mr. Charlebois lost the ability to speak and became paraplegic within a year of the accident, thereby falling within the dismemberment coverage provided by the ADD policy. (*Id.*) Plaintiff submitted with her claim a letter from Dr. Charles K. Powers, dated October 16, 2009, wherein Dr. Powers stated that Mr. Charlebois had partial hemiplegia and permanently lost the ability to speak on November 30, 2007. (Doc. 30-3, p. 49.)

During its evaluation of Plaintiff's claim for dismemberment benefits, Defendant asked Dr. Jill C. Fallon to opine as to whether Mr. Charlebois suffered from paraplegia, partial hemiplegia, and total loss of speech. (*Id.* at 43–45.) Dr. Fallon reviewed Dr. Powers' medical records and opined that Mr. Charlebois did not suffer total and permanent speech loss or complete and irreversible paralysis of his limbs that would

---

[1] Plaintiff does not contest the denial of her claim for accidental death benefits in this action.

support a finding of paraplegia or hemiplegia. (*Id.* at 44–45.) Defendant therefore denied

Plaintiff's claim for accidental dismemberment benefits on February 9, 2010. (Doc. 30-6,

p. 76–80.)

Plaintiff appealed the denial of her claim, arguing that Defendant applied the

wrong definition of paralysis. (Doc. 30-3, pp. 18–20.) Defendant denied Plaintiff's

appeal, reasoning that paralysis is not an ambiguous term and that Mr. Charlebois did

not suffer a loss due to paraplegia with 365 days of the accident. (Doc. 30-6, pp. 68–

72.) Defendant permitted Plaintiff to appeal its decision a second time, but that appeal

also resulted in a denial of benefits. (Doc. 30-3, p. 1; Doc. 30-7, pp. 129–30.)

Plaintiff then brought this action against Defendant for the denial of Plaintiff's

claim for accidental dismemberment benefits. (Doc. 1.) Both parties have moved for

summary judgment. (Docs. 25, 34.)

The Magistrate Judge issued a Report and Recommendation with regard to the

pending summary judgment motions. (Doc. 37.) He recommended denying Plaintiff's

summary judgment motion and granting Defendant's motion. (Doc. 37, p. 21.) More

specifically, the Magistrate Judge recommended that the Court:

(1)   find that the *de novo* standard of review governs Defendant's decision to
deny Plaintiff's claim for benefits under the ADD Policy.

(2)   interpret "complete and irreversible paralysis" to mean complete and
irreversible loss or impairment of voluntary movement, motor function or
sensation.

(*Id.*) Plaintiff filed a timely objection to the Magistrate Judge's Report and

Recommendation. (Doc. 38.) Defendant did not timely object to the Magistrate Judge's

Report and Recommendation but did respond to Plaintiff's objection. (Doc. 41.)

**STANDARDS**

**1. Review of the Magistrate Judge's Report and Recommendation**

With regard to the referral of this matter to the magistrate judge, a district judge may accept, reject or modify the magistrate judge's report and recommendation after conducting a careful and complete review of the magistrate judge's findings and recommendations. 28 U.S.C. § 636(b)(1); *Williams v. Wainwright*, 681 F.2d 732 (11th Cir. 1982). A district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). This requires that the district judge "give fresh consideration to those issues to which specific objection has been made by a party." *Jeffrey S. v. State Bd. of Educ.*, 896 F.2d 507, 512 (11th Cir. 1990) (citation omitted).

Absent a specific objection, however, a district judge need not review factual findings *de novo*. *See Garvey v. Vaughn*, 993 F.2d 776, 779 n.9 (11th Cir. 1993) (noting that when a party "did not file specific objections to factual findings by the magistrate judge, there was no requirement that the district court *de novo* review those findings" (citations omitted)). A district judge must, however, review legal conclusions *de novo*, even in the absence of an objection. *See Cooper–Houston v. S. Ry.*, 37 F.3d 603, 604 (11th Cir. 1994); *Castro Bobadilla v. Reno*, 826 F. Supp. 1428, 1431–32 (S.D. Fla. 1993). That said, "[n]either the Constitution nor the statute requires a district judge to review, *de novo*, findings and recommendations that the parties themselves accept as correct." *United States v. Woodard*, 387 F.3d 1329, 1334 (11th Cir. 2004) (citation omitted).

The district judge has the "widest discretion" as to its consideration of the recommendations of the magistrate judge, *Williams v. McNeil*, 557 F.3d 1287, 1291

(11th Cir. 2009), and it "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(3); *see also* Local Rule 6.02. The district judge may consider arguments not presented to the magistrate judge, *Stephens v. Tolbert*, 471 F.3d 1173, 1174 (11th Cir. 2006), or it may decline to consider such arguments, *Williams*, 557 F.3d at 1291.

### 2. Standard of Review for Summary Judgment Applicable to ERISA Cases

With regard to the cross motions for summary judgment, "the standard of review applicable to ERISA cases is somewhat different than in other cases." *Ruple v. Hartford Life & Accident Ins. Co.*, 340 F. App'x 604, 610 (11th Cir. 2009). In determining whether a denial of benefits was proper, the Court reviews the decision of the policy administrator to determine only whether its decision was arbitrary and capricious. *Jett v. Blue Cross & Blue Shield of Ala.*, 890 F.2d 1137, 1139 (11th Cir. 1989). To accomplish this, the Supreme Court has established standards of review that depend on the level of discretion granted to the administrator under the terms of the plan: (1) *de novo* review where the plan grants no discretion, (2) arbitrary and capricious review if the plan grants the administrator discretion, and (3) heightened arbitrary and capricious review if the administrator has discretion to grant or deny claims but has a conflict of interest. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

The Eleventh Circuit uses a multi-step analysis to guide the review of administrator decisions. *Ruple*, 340 F. App'x at 610–11. The analysis involves six steps:

> (1)   Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

(2)     If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

(3)     If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4)     If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5)     If there is no conflict, then end the inquiry and affirm the decision.

(6)     If there is a conflict of interest, then apply heightened arbitrary and capricious review to the decision to affirm or deny it.

*Id.*

## DISCUSSION

### 1.  Defendant's Untimely Objection

The Magistrate Judge found that the *de novo* standard of review governs the Defendant's decision to deny Plaintiff's claim for benefits under the ADD policy. No timely objection was made to this determination, but Defendant belatedly raised the issue in its response to Plaintiff's objection. (Doc. 41, pp. 8–12.)

Title 28 U.S.C. § 636(b)(1) requires a district judge to "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." The statute does not require any review at all of any issue that is not the subject of a timely objection. *Thomas v. Arn*, 474 U.S. 140, 149 (1985) (holding that a failure to make timely objections to a magistrate's findings or recommendations waives appellate review of both factual and legal questions). A timely objection is required by the statute so that district judges may efficiently handle the work of the court. *Id.* at 153 ("It seems clear that Congress would

not have wanted district judges to devote time to reviewing magistrate's reports except to the extent that such review is requested by the parties or otherwise necessitated by Article III of the Constitution."). The Court finds that Defendant has waived its objection to the Magistrate Judge's determination that the *de novo* standard applies. *Cf. United States v. Pilati*, 627 F.3d 1360, 1364 (11th Cir. 2010) ("While Pilati raised the issue of not being convicted of a qualifying offense before the magistrate judge, he did not raise this issue in his appeal to the district court. Thus, this argument has been waived or abandoned by his failure to raise it on appeal to the district court.").[2]

### 2.  Plaintiff's Timely Objections

Plaintiff objects to the Magistrate Judge's interpretation of the ADD policy and to his factual finding that Mr. Charlebois did not suffer a loss due to Quadriplegia, Paraplegia, or Hemiplegia within 365 days of his accident. The Court discusses each objection in turn.

### A.  Interpretation of the ADD Policy

Plaintiff objects to the Magistrate Judge's interpretation of the ADD policy, which turned on the meaning of "complete and irreversible paralysis." (Doc. 38, pp. 10–15.) Plaintiff argues that paralysis may refer to: (1) impairment or loss of sensation in the limbs; or (2) complete loss of use of a limb. (Doc. 25, pp. 18–25.) Plaintiff therefore argues that, because paralysis has multiple meanings, the ADD policy is ambiguous and should be construed against the insurer. (*Id.*) In opposition, Defendant argues that

---

[2]  Even if the Court were to find that Defendant's belated arguments merit review of the Magistrate Judge's determination—which they do not, as such arguments were waived—the Court would conclude that any such objection is misplaced. Having reviewed the record *de novo*, this Court would find that the Magistrate Judge did not err in concluding that the *de novo* standard of review governs the Defendant's decision to deny Plaintiff's claim for benefits under the ADD policy.

Plaintiff's definition of paralysis is not consistent with the plain meaning of the term, which an ordinary person would not equate with mere impairment or loss of sensation. (Doc. 34, pp. 11–12.) Defendant argues further that Plaintiff ignores the use of the adjectives "complete and irreversible," which clarify the meaning of paralysis. (*Id.*) While Defendant did not affirmatively propose an alternative definition of paralysis in its summary judgment papers (*see, e.g.*, Doc. 34, p. 12), it clarified in its response to Plaintiff's objection that it understood paralysis to mean the "loss of use of the insured's limb(s)" and that "complete and irreversible paralysis" should be understood to mean complete and irreversible loss of use of the insured's limb(s). (Doc. 41, p. 4.)

An insurance contract is ambiguous when one reasonable interpretation results in coverage and another reasonable interpretation results in exclusion. *Billings v. UNUM Life Ins. Co. of Am.*, 459 F.3d 1088, 1094 (11th Cir. 2006). If an ambiguity exists, it is construed against the insurance company. *See Jones v. Am. Gen. Life & Acc. Ins. Co.*, 370 F.3d 1065, 1070 (11th Cir. 2004). An ambiguity does not exist simply "because a contract requires interpretation or a contract fails to define a term." *Smith v. Home Depot Welfare Benefits Plan*, No. 8:04-cv-1924, 2006 WL 1980284 at *7 (M.D. Fla. July 12, 2006). Rather, the Court must "assess the natural or plain meaning of the policy language, striving to give meaning to every provision." *Id.*

The Court begins, as did the Magistrate Judge, by reviewing dictionary definitions for paralysis. As noted by the Magistrate Judge, the definitions of record make clear that the ordinary meaning of paralysis includes a complete or partial loss of voluntary movement, motor function, or sensation. *See Dorland's Illustrated Medical Dictionary* 1397 (31st ed. 2007); *Webster's Third New International Dictionary* 1637 (2002); *Stedman's Medical Dictionary* 1295 (26th ed. 1995). This term is ambiguous not only in

that it refers to both complete and partial losses but also because it refers to a loss of movement, motor function, and sensation. Defendant's argument that paralysis refers only to loss of use, therefore, is without merit. The ADD policy is ambiguous.[3]

Defendant contends, however, that the use of the adjectival phrase "complete and irreversible" makes it clear that paralysis refers to only a complete loss of use. The Court is not persuaded. First, the addition of an adjective phrase "complete and irreversible" does nothing to clarify whether paralysis refers to a loss of movement, motor function, or sensation.

Second, the Court agrees with the Tenth Circuit in *Rasenack v. AIG Life Insurance Company*, 585 F.3d 1311 (10th Cir. 2009), that the addition of that adjectival phrase does little to solve the ambiguity that arises from the use of an undefined and ambiguous word. That case, like this case, involved the interpretation of the phrase "complete and irreversible paralysis" in an ADD policy. *Id.* at 1314. Paralysis was not defined by the policy. *Id.* at 1319–20. The insurance company interpreted it to mean absence of movement. *Id.* While the court found the company's interpretation reasonable, it determined that there were other reasonable interpretations and, therefore, found the word paralysis ambiguous. *Id.*

---

[3] The Court does not find anything untoward in Plaintiff's use of medical dictionaries to support her position. The Eleventh Circuit has noted that "courts often turn to dictionary definitions for guidance" when determining "the common usage or ordinary meaning of a term." *United States v. McNab*, 331 F.3d 1228, 1237 (11th Cir. 2003). Indeed, when interpreting policies in ERISA cases, courts frequently refer to the same dictionaries as those relied on by the Magistrate Judge in this case. *See, e.g.*, *Anderson v. UNUM Provident Corp.*, 369 F.3d 1257, 1264 (11th Cir. 2004) (citing a definition found in *Webster's Third International Dictionary*); *Raymond v. Life Ins. Co. of N. Am.*, No. 10-20005, at *4 (S.D. Fla. Oct. 20, 2010) (referring to a definition found in *Stedman's Medical Dictionary*); *Ecklund v. Continental Cas. Co.*, 415 F. Supp. 2d 1353 (N.D. Ala. 2005) (referring to *Dorland's Illustrated Medical Dictionary* for the definition of numerous medical terms).

The insurance company then argued that the use of "complete and irreversible" saved the policy from ambiguity. *Id.* at 1320. The court rejected that argument too, reasoning that "complete and irreversible" modifies paralysis and "therefore still rests on the definition of 'paralysis.'" *Id.* Thus, the court construed the ambiguity against the insurance company. *Id.*

The ADD policy in this case suffers from the same ambiguity as the policy in *Rasenack*. The policy does not define paralysis. Like the policy in *Rasenack*, the use of the modifier "complete and irreversible" does not clarify the meaning of "paralysis" because that word is ambiguous. Thus, the Court concludes, as did the Magistrate Judge, that the phrase "complete and irreversible paralysis" is ambiguous and the policy should be construed against Defendant. *See Jones*, 370 F.3d at 1070. So construed, "complete and irreversible paralysis" means, and the ADD policy provides coverage for, a "complete and irreversible loss or impairment of voluntary movement, motor function, or sensation." That said, the Court diverges from the Magistrate Judge's interpretation as follows.

By modifying the reasonable and ordinary meaning of paralysis with the adjectival phrase "complete and irreversible," one is left with "complete and irreversible loss or impairment of voluntary movement, motor function, or sensation." The Magistrate Judge's interprets complete to require "total," i.e., 100 percent, impairment of voluntary movement, motor function, or sensation. Plaintiff asserts that this interpretation was erroneous and that there is no requirement that the impairment of voluntary movement, motor function, or sensation be 100 percent. (Doc. 38, pp. 10–12.) She contends that the impairment can be complete in the sense that it is final or finalized. Plaintiff has a point.

As construed by the Magistrate Judge and Defendant, the meaning of "complete and irreversible paralysis" is internally inconsistent. This inconsistency can be alleviated if the word "complete" is understood to refer to a condition that is not transitory in nature or something that is not a temporary condition which may resolve favorably over time.[4] Otherwise, as U.S. Circuit Judge Stephanie K. Seymour queried in *Rasenak*, what would constitute "complete and irreversible paralysis"?

Accordingly, the Court overrules the Magistrate Judge's interpretation of the ADD policy as indicated above.

### B. Factual Finding of a Loss due to Paraplegia or Hemipleglia

Plaintiff also objects to the Magistrate Judge's finding that Mr. Charlebois did not suffer from a "loss due to Quadriplegia, Paraplegia, or Hemipleglia" within 365 days of an accident. Because the Magistrate Judge applied an incorrect interpretation of the ADD policy, his findings applying that interpretation must also be overruled. Upon a thorough review of the record, however, the Court determines that there are disputed questions of fact as to whether Mr. Charlebois suffered a complete and irreversible loss or impairment of voluntary movement, motor function, or sensation within 365 days of the accident that preclude summary judgment.

Some records suggest Mr. Charlebois did not suffer from a loss or impairment of movement or motor function. A record dated November 30, 2007, notes that he had

---

[4] Defining complete in this way also has the added benefit of conforming to the doctrine of *noscitur a sociis*. This doctrine is defined in *Black's Law Dictionary* as a "cannon of construction holding that the meaning of an unclear word or phrase should be determined by the words immediately surrounding it." *Black's Law Dictionary* 1160–61 (9th ed. 2009). Florida and federal courts regularly apply this doctrine when construing insurance policies. *See, e.g.*, *City of Delray Beach, Fla. v. Agriculture Ins. Co.*, 85 F.3d 1527, 1534 (11th Cir. 1996) (quoting *Thomas v. City of Crescent City*, 503 So. 2d 1299, n.2 (Fla. 5th DCA 1987), in support of the court's use of the doctrine to construe an insurance contract).

"good muscle strength [in his] upper and lower extremities" and "normal gait." (Doc. 30-5, p. 44.) Another record notes that his wife reports that he "exercises twice a week (walks in yard)." (Doc. 30-3, p. 96.) Finally, some records fail to mention whether Mr. Charlebois was using a wheelchair, which suggests he did not. (*See, e.g.*, *id.* at 87, 99.)

At the same time, other records suggest that Mr. Charlebois had a complete and irreversible impairment of voluntary movement, motor function, or sensation within 365 days of the accident. He presented at some examinations in a wheelchair (*see, e.g.*, *id.* at 50) and suffered obvious muscle wasting (*id.*). In addition, Mr. Charlebois' treating physician opined that he suffered from partial hemiplegia based on a review of his January 9, 2008 treatment notes (*id.* at 49), and a physician employed by Defendant opined that Mr. Charlebois had "progressive weakness and occasional numbness" within 365 days of the accident (*id.* at 44–45).

Thus, a review of the record reveals that there are disputed questions of fact as to whether Mr. Charlebois suffered a complete and irreversible loss or impairment of voluntary movement, motor function, or sensation within 365 days of the accident. As such, the parties' motions for summary judgment are due to be denied.

## CONCLUSION

Accordingly, it is hereby **ORDERED and ADJUDGED**:

1.    Plaintiff's Objection (Doc. 38) is **SUSTAINED**.

2.    The Magistrate Judge's Report and Recommendation (Doc. 37) is **ADOPTED IN PART** and **OVERRULED IN PART**. The Court adopts the Magistrate Judge's conclusion that paralysis is an ambiguous term. The Court overrules the Magistrate Judge's interpretation of the phrase "complete and irreversible paralysis" as indicated in this Order.

3.      Plaintiff's Motion for Summary Judgment (Doc. 25) is **DENIED**.

4.      Defendant's Cross-Motion for Summary Judgment (Doc. 34) is **DENIED**.

5.      This matter is referred to the Magistrate Judge to conduct a bench trial on

Plaintiff's claims.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on March 13, 2013.


ROY B. DALTON JR.
United States District Judge



Copies:
Counsel of Record